---

## SAME v. SAME.

**Negligence:** EXCAVATION IN STREET. A person who passes along a public street open to travel has a right to presume that it is in a reasonably safe condition, and if in the exercise of reasonable care he falls into an excavation in the street, which was not adequately protected, and sustains injuries, he may recover therefor in a proper case.

REHEARING of foregoing case.

*C. E. Magoon* and *O. P. Mason,* for plaintiff in error.

*Lamb, Billingsley & Lambertson,* for defendant in error.

MAXWELL, J.

A motion for a rehearing was filed on behalf of the city, upon the filing of the foregoing opinion, accompanied by an elaborate brief, in which the principal questions involved in the case were ably discussed and presented, and a rehearing was granted and the case again argued and submitted. The facts are stated in the former opinion and need not be repeated here. The chief justice, in a lengthy and able dissenting opinion filed herewith, has stated a considerable portion of the evidence and copied the instructions given and refused. It is unnecessary, therefore, to copy the same here.

It will be seen that the instructions of the court were very favorable to the city, and that all the instructions asked were given in other instructions, particularly No. 9 asked by the city and refused.

If, on the facts proved in this case, a plaintiff was unable to recover, the effect would be virtually to exempt municipal corporations from liability where excavations were made in the sidewalks and left without sufficient protection. If such a change in the law is made it should be done by the legislature, and not the courts. The rule as to contributory negligence adopted by this court is conceded in the dissenting opinion to be the correct one, and as the evidence on the part of the plaintiff below not only failed to show contributory negligence on his part, but tended to negative the existence of such negligence the burden of proving the same devolved on the city. The instruction asked, therefore, was properly refused.

It is very clear that justice has been done. The undisputed testimony shows that the plaintiff below, while walking along O street, on his way to the U. P. depot, between 7 and 8 o'clock in the evening, fell into the excavation in question and sustained injuries of a serious character, and which he did not recover from for several months. The clear weight of testimony also shows that the excavation on the whole or a considerable part of the north side of the lot in question was left unguarded—without barriers to prevent persons from falling into the same. A person who by night or day passes along a public street open to travel has a right to presume that it is in a safe condition; and if, in the exercise of reasonable care, he falls into an excavation in the street which was not adequately protected, and sustains injuries, he may in a proper case recover therefor. *Barnham v. Boston*, 10 Allen, 290. *Stinson v. City of Gardiner*, 42 Me., 248. *Williams v. Clinton*, 28 Conn., 264. *Tolland v. Willington*, 26 Id., 578. We ad-

here to our former opinion, and the judgment must be affirmed.

JUDGMENT AFFIRMED.

REESE, J., concurs.

COBB, CH. J., dissenting.

Being unable to agree with the majority of the court in the opinion at which they have arrived in this case, and in view of the importance of the questions involved, and the growing frequency of actions for injuries of this kind, seriously threatening the value of property within the limits of our municipal corporations, I present my views of the law of the case somewhat more at length than is usual in dissenting opinions.

This cause was heard at the January term, 1884, when the judgment was affirmed. An application for a rehearing on the part of the plaintiff in error having been allowed, the cause was thoroughly reargued at the present term.

The action was for damages sustained by the plaintiff by reason of his falling into an area of a new building in course of construction, which, it is alleged, had been negligently left unguarded.

There was evidence tending to prove that at the time of the injury there was in front of the new building at the corner of O and Eighth streets, on the south side of O and west side of Eighth, opposite the Metropolitan hotel in the city of Lincoln, an excavation (area) extending along the O street front of the building, about 65 feet in length, 18 or 20 feet in breadth, and from 8 to 9 feet in depth. There was an area wall around this excavation, extending from the bottom to the top of the ground, and five or six inches above it, at or near the west end (where the injury occurred). One witness testified that a few evenings previous

to the night of the injury he noticed the excavation and the guards around it; that the guards extended across the east end, and went part way down the side of O street, the north side across the opening, and went across the west end. The board extended down the side about 16 feet—common fence board. The one at the west end ran across to the corner of the St. Charles hotel; and extended around the corner 7 or 8 feet, perhaps. The examination of this witness was continued as follows:

Q. What was the condition as to the remainder of the way at such times along O street?

A. There was none outside of those mentioned, that I saw.

Q. No guards or boards?

A. No..

Q. What was the distance of that opening where there was no guards or boards along O street?

A. Perhaps 40 feet—40, I should judge.

Q. At such time was the area wall erected?

A. Yes, sir.

Q. And the cellar dug?

A. Yes, sir.

Q. Do you know the condition of that place on the evening or after night-fall on the evening of the 24th of November, or Thanksgiving evening of 1881, if noticed, the night he was injured?

A. It was about the same as it had been two or three days previous.

Q. Did you pass by on that evening?

A. Yes.

Q. How often, if more than once?

A. I came by that evening as I came from work.

Q. That evening?

A. I did not pass by as I remember of; I was out there.

Q. What time in the evening was it you passed by and saw that?

A.   Just at dusk.

Q.   Was it after or before the men had quit work on the building in and around there?

A.   After they had quit work.

Q.   Were you in and about the place when the plaintiff was injured?

A.   Yes, sir.

\*     \*.     \*     ·\*     \*     \*     \*     \*

Q.   What was the condition of that evening, as to light or dark?

A.   It was a very dark evening. ·

Q.   What time of the evening was it?

A.   I think it was about eight o'clock.

Q.   Could you see the man in the cellar?

A.   They had a light when I went out; took a lamp with them.

\*     \*     \*     \*     \*     \*     \*     \*

Q.   About how far from the north-west corner was it where this man lay; how far from the west end would you judge he was laying that evening?

A.   About twenty or twenty-five feet.

Q.   Did you notice as to the condition of the guards that evening along opposite on O street from where he fell in?

A.   There was none there.

\*     \*     \*     \*     \*     \*     \*     \*

Q.   What kind of barriers had been kept along there?

A.   There had been posts set between the ground and the stone wall, and boards nailed up against the posts.

Q.   Had there been a temporary walk up to the barrier on the outside?

A.   Yes.

Q.   How close was that walk and temporary barrier to that excavation?

A.   Close up to the stone wall.

The plaintiff testified in his own behalf as follows:

Q.   On what day did you arrive in the city of Lincoln?

A.   I arrived here about four o'clock on the evening of the 24th of November, 1881.

Q.   You know the place in controversy, where you received your injuries?   State where it is located.

A.   It is located on O street, a little west from 8th street, I think, and on the south side of O street.

Q.   State when was the first time you ever passed along that side of O street at or near the place where this excavation was. -

A.   That was the first time I passed along O street— along that part of it.   I had been on O street, that evening before dark, from the corner where that furniture store is kept on the west side of Government square.   I had been east on Eighth street (evidently meaning O street) to about Sixteenth street, where I turned south.

A.   Had you before that time been along the south side of O street, between Seventh and Eighth streets, where this excavation was?

A.   I never had; had never before that time seen that excavation.

Q.   State at what time in the evening you approached that excavation, and in what direction?

A.   It was not far from seven o'clock, as I can remember, and I approached—I left the Oriental Hotel with the instructions there, and was attempting to go to the Union Pacific depot.   They told me to go straight north on that street till I got to O street, and when I got there I was to go directly west, when I would reach the Union Pacific depot, to which my daughter was coming; I expected her home.   They told me the streets were by letters.   I asked if that was O street; they told me it was, and I went directly west.

Q.   On the south side of O street?

A.   On the south side of O street.

Q.   About what kind of a night was it as you were going down there?

A. It was dark and somewhat foggy, as I remember it.

Q. Describe to the jury just how you were precipitated into that excavation. You are the party, are you?

A. I am; there were two gentlemen walking in front of me, perhaps forty feet, and it being quite dark, and supposing that they understood the streets of the town better than I did, was following, as it were, very fast, the sound of their footsteps on the walk.

Q. Which way were they going?

A. West, on O street. There was a light some forty or fifty feet west of where I was, a dim light upon a post, and I observed that these men forty or fifty feet ahead of me were inside the light, next the building. My supposition was that I had got out of the street, and that it was quite dark. I was getting out of the beaten path. I turned to the left, or attempted to turn to the left, and this foot was going on nothing (indicating the left foot). My impression was that I had stepped into a hole, and I attempted to recover myself, I suppose, by my throwing this foot round (the right), and I continued to go down, and landed on the right foot, and then I fell in this position on the right hand (witness illustrates the position), and my head hit something hard about here, above the left temple. The swelling appeared here where my hand is, after; I cannot tell for how long a time. I have no recollection after my head was hit that I lay—I thought for quite a length of time; or I cannot tell anything about the length of time; it might have been a long or a shorter time, but I was quite chilled when I came to myself, and I was not chilled when I fell. My first recollection is, that when I came to myself I was hunting for my hat. I got my hat, and looked above; I could see the light; then I remembered what I was doing when this thing happened, and I could see that I was in a cellar, or some place I was in; I knew it was impossible for me to get out of there, and I began to halloo for help, and I continued so for some time.

City of Lincoln v. Walker.

\*       \*       \*       \*       \*       \*       \*       \*

Q. State what guard or barrier there was, if any, between the walk and the place where you fell into the excavation, on the night you received the injury.

A. There was none.

There was other testimony, but I have quoted sufficient to show the application of the instructions given and refused upon the two points of the negligence of the city or of the builder in leaving the area open and unguarded, and the contributory negligence of the plaintiff in walking into it.

The following instructions were given to the jury by the court on its own motion:

"I. If you find the injury to the plaintiff complained of was occasioned by the negligence and want of ordinary care of defendant, it then devolves upon the defendant to satisfy you that the negligence and want of ordinary care of the plaintiff contributed thereto to prevent a recovery in the case.

"II. If you find defendant did not use ordinary care and diligence in and about the excavating referred to, and in guarding and protecting the same, and in the use of the street, and you find the plaintiff was injured by want of such ordinary care of the defendant, he cannot recover in this case, if you find the plaintiff in passing and walking along the street or sidewalk therein was guilty of negligence and want of ordinary care, and that such negligence and want of ordinary care on the part of the plaintiff contributed to the injury received, or claimed to be received, by the plaintiff.

"III. Ordinary care on the part of plaintiff is that degree of care and diligence which persons of ordinary prudence would usually use under the circumstances in which the plaintiff was placed at time of falling into the excavation in question.

"IV. A slight want of care and diligence on part of

plaintiff will not prevent a recovery in this case, provided the injury complained of was occasioned by want of ordinary care and diligence of the defendant.

" V.   Ordinary care required on the part of defendants is that degree of care which a man of ordinary prudence would usually use under the same circumstances in excavating and using the street in question and guarding and protecting the same so travelers would not be injured during the excavation and use of the street.

" VI.   If you find the defendant used ordinary care in and about the excavation and use of the street in question, and guarding and protecting the same, then you will find for the defendant."

The following instructions were given at the request of the plaintiff:

" I.   The court instructs the jury that the defendant, the city, is bound by law to use reasonable and ordinary caution, and care, and supervision, to keep its sidewalks and streets in a safe condition for travel by night as well as by day, and if it fails to do so it is liable for injuries sustained in consequence of such failure, provided the party injured is himself exercising reasonable and ordinary care and caution; and the fact that the plaintiff may in some way have caused the injury sustained by him will not prevent his recovery, if by ordinary care he could not have avoided the consequence to himself of the defendant's negligence.

" II.   If the jury believe from the evidence that the corporate authorities of the city of Lincoln did not exercise reasonable and ordinary care and supervision over that portion of the streets and sidewalk where the injury in question is alleged to have occurred, to keep it in good and safe condition, and by that means allowed it to become defective and unsafe; and if the jury further believe from the evidence that the plaintiff in attempting to walk along that portion of the street and sidewalk by reason of such

defects was injured, and has sustained damage thereby, as charged in the petition, and that he was at the time exercising reasonable and ordinary care and caution to avoid such injury, then the defendant is liable, and the jury should find for the plaintiff.

"III. The court instructs the jury that while the city has a right to permit lot owners, for the purpose of making improvements, to make excavations or holes in the public streets or sidewalks, yet when it does so it is bound to take notice of the character of such holes or excavations, and the condition in which the streets or sidewalks are left, and if such excavations are dangerous, it is the duty of the city to put up, or cause to be put up, and use reasonable care to keep up, guards or notices of some kind by day, and lights or guards by night, to warn travelers of the condition of the street or sidewalk at such place, and such duty cannot be shifted upon the lot owner or person making the excavation.

"IV. The court instructs the jury that when an excavation has been made in the streets or sidewalks of a city, without the consent of the public, and it is left unguarded and unprotected for such a length of time that the public authorities of the city, in the exercise of reasonable care and prudence, ought to · have discovered the fact, then actual notice to such authorities of the condition of the street and sidewalk is not necessary to hold the city liable for injury sustained by a person in consequence of the dangerous condition of the street or sidewalk, if he is himself using reasonable and ordinary care to avoid such injury. [Modified as follows:] 'And does not by his own negligence directly contribute to produce the injury complained of.'

"V. The jury are further instructed that reasonable and ordinary care and caution required of the plaintiff, as mentioned in these instructions, means that degree of care and caution which might reasonably be expected from an

ordinary, prudent person under the circumstances sur-
rounding the plaintiff at the time of the alleged injury;
that the plaintiff was bound to exercise only ordinary care,
and that slight negligence will not defeat his recovery for
an injury received in consequence of a defect in the street.
If the city authorities were guilty of negligence and want
of ordinary care in permitting a dangerous excavation to
be made, and remain unprotected in a publicly traveled
street. [Modified as follows:] 'And you find the plaintiff's
negligence did not directly contribute to produce the in-
jury complained of.'

" VI. If the jury believe from the evidence that the plain-
tiff was injured by reason of the defendant's negligence and
want of ordinary care in failing to keep its sidewalks and
streets in reasonably good repair, or negligently allowing
the same to remain in an unsafe condition, as explained in
these instructions, and without fault on his part, and that
he has sustained damage, then the jury has a right to find
for him such an amount of damages as the jury believe
from the evidence will compensate him for the personal in-
juries so received, and for his loss of time in endeavoring
to be cured, and his expenses necessarily incurred in respect
thereto, if any such loss or expenses have been proved, and
also for the pain and suffering undergone by him, and any
permanent injury, if any such has been proven."

The following instructions, prayed for by the defendant,
were given:

" I.  While the plaintiff had a right to presume that
defendant's sidewalks were in good repair, and was only
bound to exercise ordinary care, yet if the jury find from
the evidence that the plaintiff was apprised and knew of
the excavation in the sidewalk, by a barricade across the
same, or otherwise, before receiving the alleged injury, then
the presumption of good repair ceased, and you will find
for the defendant, unless you further find that the plaintiff
thereafter exercised extraordinary care and precaution, and

was so exercising extraordinary care and precaution at the time of this alleged injury.

"II. If you find from the evidence that the plaintiff was apprised of the excavation by the barriers placed across the sidewalk just before receiving the alleged injury, you will find for the defendant, unless you further find that the subsequent negligence of the plaintiff in no way contributed to the alleged injury.

"III. The mere fact that the defendant city permitted an excavation to be made and exist in the sidewalk was not of itself negligence, but suffering it to be made and exist without suitable protection would be negligence, and if the jury believe from the evidence the excavation was, on the evening of the day of the alleged injury, surrounded by a suitable, substantial protection, or barricade, then you will find for the defendant, unless you further find that the city was notified that said barricade, or a portion of it, had been removed and had sufficient time to repair the same before the alleged injury occurred.

"IV. The jury are instructed that, while it was the duty of the city to keep its sidewalks in repair for safe passage, yet it had the right to permit the excavation to be made under the sidewalk, so long as it did not interfere with the public interest, and the city would only be liable in case of negligence in permitting the excavation to remain open and unprotected by suitable barriers. And if the jury believe from the evidence that the excavation into which the plaintiff claims to have fallen and received the alleged injury was surrounded by barriers sufficient to apprise a person exercising ordinary care while passing along the sidewalk, of the excavation, then you will find for the defendant.

"V. The plaintiff was bound to exercise ordinary care for his personal safety while passing along the sidewalk of the defendant, and if the jury believe from the evidence that plaintiff's slight negligence contributed to the alleged injury, then you will find for the defendant. [Modified

as follows:] 'Although there may have been negligence on the part of the plaintiff, yet unless he might, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence—if you find there was negligence on part of defendant which caused the injury to plaintiff complained of—he, the said plaintiff is entitled to recover in the case.'

"VIII. The jury are instructed that ordinary care is that degree of ordinary care which a person of ordinary prudence is presumed to use under the particular circumstances to avoid injury. It must be in proportion to the danger to be avoided and the fatal consequences involved in its neglect."

The following instructions, prayed by the defendant, were refused by the court:

" If the jury believe from the evidence that there was a slight want of ordinary care on the part of the plaintiff, which slight want of ordinary care contributed to the injuries complained of, the plaintiff cannot recover, unless the jury further find the negligence on the part of the defendant was so gross as to justify the jury in finding that the alleged injury was caused by the willful and malicious act of the defendant or its agents or servants.

" VII.* The jury are instructed as a matter of law that if the plaintiff was guilty of any negligence, however slight, which contributed to the injury complained of, he cannot recover. [Modified as follows:] ' Provided such negligence directly contributed to the injury complained of.'

" IX. The jury are instructed that before the plaintiff can recover in this action it is incumbent upon him to show that no negligence of his contributed to the injury damages for which are claimed herein, and that upon him, the plaintiff, rests the burden of proof of the absence of such contributory negligence."

---

* NOTE.—The writer of this opinion is unable to tell from the record whether the above instruction, No. 7, was given as modified or not.

The jury found for the plaintiff, and assessed his damages at $1,200.

A motion for a new trial was overruled.

The opinion of the court upon the hearing of this case was chiefly directed to the consideration of the question of the burden of proof of contributory negligence on the part of the plaintiff, under the pleadings and evidence in the case. And the argument of counsel at the rehearing was addressed principally to this point.

As it is conceded by the writer of the original opinion in the case that there is a conflict of authority as to whether contributory negligence on the part of the plaintiff is a matter to be disproved or negatived by the plaintiff in presenting his case, on pain of being non-suited, or whether it is a matter of defense, strictly, which the plaintiff may ignore, unless presented by the defendant, and the court having stated the rule which it was thought best to follow in such conflict of authority, it will be adhered to, unless upon careful review it shall be found illogical, or calculated to lead to injustice. The rule thus stated is as follows: "That if the plaintiff can prove his case without showing contributory negligence, it is a matter of defense to be proved by the defendant."

This rule is stated by the supreme court of the United States in the case of *Indianapolis & St. Louis Railroad Company v. Horst*, 93 U. S., 291, in the following language: "Where the evidence on the part of the plaintiff does not tend to establish contributory negligence on his part, and the court charged that the burden of proving it rested on the defendant, and that it must be established by a preponderance of the evidence, the charge was not erroneous." The supreme court of Wisconsin in the early cases of *Chamberlain v. The Milwaukee and Mississippi Railroad Co.*, 7 Wis., 425, and *Dressler v. Davis*, Id., 527, the latter case cited by counsel for defendant in their brief, held that "In general, where a party sues for an in-

jury to him, occurring through the alleged carelessness or negligence of the defendant, he must show that he was not guilty of negligence on his part." This rule was adhered to in the case of *Milwaukee & Chicago Railroad Company v. Hunter,* 11 Id., 167, but the reasoning of the opinion by Judge Paine is strongly against it. The next case in which the point was considered by that court was that of *Achtenhagen v. The City of Watertown,* 18 Id., 331, in which the rule is materially changed, if not reversed. I quote from the syllabus. "In an action for an injury sustained through the negligence of the defendant the plaintiff is not bound in the first instance to show that he himself was not guilty of negligence, which contributed to the injury, but it is enough if the proof introduced and the circumstances attending the injury established *prima facie* that it was occasioned by the negligence of the defendant. But if the plaintiff's own evidence raises an inference of negligence against himself, he must, in order to establish a *prima facie* case, show that he was guilty of no negligence."

In the case of *Hoyt v. The City of Hudson,* 41 Id., 105, the same court stated the rule as follows: "In an action for injuries from negligence, where there is nothing in plaintiff's evidence tending to show contributory negligence, the *presumption* is against it, and the burden of proof is upon the defendant. If contributory negligence conclusively appears from plaintiff's own evidence, he will be non-suited, while if the evidence merely *tends* to show such negligence, the question will be for the jury."

The rule thus laid down is explained and adhered to in *Prideaux v. The City of Mineral Point,* 43 Id., 513. The court, by C. J. Ryan, says, in speaking of the said case: "The rule intended in that case is, that a plaintiff giving evidence of the negligence of the defendant and the resulting injury to himself, without showing any contributory negligence, is bound to go no further—he is not required to negative his own negligence. If, however, the

plaintiff in proving the injury shows contributory negligence sufficient to defeat the action, he disproves his own case of injury by the negligence of the defendant alone. If the plaintiff's evidence leaves no doubt of the fact, his contributory negligence is taken as matter of law to warrant a non-suit. If the plaintiff's evidence leaves the fact in doubt, the evidence of contributory negligence on both sides should go to the jury."

The rule as above explained is adhered to in *Randall v. The Northwestern Telegraph Co.*, 54 Id., 140, and in *Kelly v. Chicago & N. W. Ry. Co*, 19 N. W. Rep., 521.

This question came before the supreme court of Missouri in the case of *Thompson v. The North Missouri Railroad Company*, 51 Mo., 190. In that case the circuit court had sustained a demurrer to the petition because there was no averment that the plaintiff at the time was exercising due care, and was himself without negligence contributing to the injury. The judgment was reversed, the court in the opinion saying: "Negligence on the part of the plaintiff is a mere defense to be set up in the answer and shown like any other defense, though of course it may be inferred from the circumstances proved by the plaintiff upon the trial."

While there are many cases holding to the contrary, it cannot be denied that the rule laid down by this court in the original opinion is sustained by sufficient authority, is sufficiently logical and reasonable. And I think it free from the charge of tending to injustice.

Assuming the above conclusion to be correct, I think the instructions to the jury in the main correct upon the subject of contributory negligence and the burden of proof.

Counsel for plaintiff in error contends that by the giving of instruction No. 1, the court withdrew from the consideration of the jury the evidence of plaintiff below, which tended to show a want of ordinary care on his part.

As we have seen in the case of *Prideaux v. The City of Mineral Point, supra,* a case upon which this court relied among others in the conclusion to which it arrived upon the point above considered, the learned court say, in explaining the rule in *Hoyt v. Hudson, supra:* "It does not put the *onus probandi* in all cases upon the defendant, as the learned judge appears to have stated. The rule intended in the case is, that a plaintiff giving evidence of the negligence of the defendant and the resulting injury to himself, without showing any contributory negligence, is bound to go no further. He is not bound to negative his own negligence. If, however, the plaintiff in proving the injury shows contributory negligence sufficient to defeat the action, he disproves his own case of injury by the negligence of the defendant alone."

However the instruction complained of might have been intended by the judge who gave it, or might be understood by a lawyer, I think the jury may well be supposed to have understood it to mean that if they believed the statement of the plaintiff as to the facts and circumstances of his injury, as given in his evidence, they must then, in order to defeat his recovery, find from the evidence given on the part of the defendant "that the negligence and want of ordinary care of the plaintiff contributed" to the injury. This instruction can only be sustained, if at all, upon the assumption that as matter of law there was nothing in the evidence on the part of the plaintiff that tended to show contributory negligence on his part.

The plaintiff, according to his own evidence, was in a strange city, and in a part of it where he had never been before. The night was so dark that his eyesight did not enable him to keep on his way, and so he followed the sound of the footsteps and voices of two men going the same way, and some forty feet ahead of him. I quote further from the plaintiff's testimony on his cross-examination, counsel taking a plat and referring to the same in the examination.

Q. When you came down here did you not find a walk turning off there to go round this excavation?

A. It may have done so.

Q. Don't you know it did so?

A. It was dark, I could not say, and I was not back there again.

Q. But you was walking here when you took this to be the front of the building?

A. If this is O street I came down here.

Q. This is the street running here; this is supposed to be the street laying here; that is the area wall standing there—that black wall; that is the west side of the building—that point there; and this is the east side.

WITNESS. This is where the St. Charles is?

MASON. Yes.

Q. Where were you when you fell off this building. This is the east end of the cellar here; this is the sidewalk laying out here (marked sidewalk); this is the temporary walk; that is the area wall; this is O street; and this out here is O street. Where were you when you fell off?

A. I must have been fifteen feet from that corner of the cellar, or somewhere about it. That would make it there, would it not? (indicating on the plat to the northwest corner.)

Q. You think you was more than fifteen feet?

A. I cannot tell.

Q. Which way were you traveling?

A. I was going west.

Q. Well, now; when you struck this barrier up here, you came down here and struck this barrier. There was a barrier, was there not, there? Did you not see any barrier there? When you came down O street you came on the sidewalk down O street above here?

A. I did.

Q. Was it downhill or uphill?

A. I think it was downhill a little.

Q. Did you observe this barrier when you struck it here?

A. I did not.

Q. You swear there was not a barrier there, or that you did not see any.

A. My recollection is I turned a little to the right, following these two men.

Q. Where were the two men?

A. They were in front of me about forty yards.

Q. What makes you think about forty yards?

A. I could hear them talking—the sound of their voices, and the sound of their feet on the sidewalk.

Q. Could you measure the distance by the sound of voices ahead of you?

A. Certainly not.

Q. And could you measure the distance by the sound of their feet on the sidewalk?

A. It would give me an idea of the distance.

Q. Could you see them at all?

A. I think I could see the outline of them.

Q. Then you were following the outline of them, were you?

A. And the sound of their voices and their feet.

Q. These two men you were following, which way were they going?

A. They were going west.

Q. At the time were they in the light of this lamp down here, or of a lamp?

A. They were some distance on there to the left of me near to the lamp and the St. Charles Hotel.

Q. Between the lamp and building?

A. Yes.

Q. And when you walked off the walk you struck a straight line for them.

A. I turned a little to the left in order to go where the men were; I thought I had got too far in the street.

Q. You turned to the left in order to go where these men were?

A. Yes, sir.

Q. When you turned to the right up here were you following these men, you swore you were turning to the right here. Now were you following these two men?

A. I was following the two men, supposing they knew the streets better than I did, I followed after them.

Q. Then you were just following after these two men —that is the fact, ain't it?

A. I was governing my motions somewhat by theirs. I tried to explain in answer to ——

Q. Never mind—answer me now. I want you should tell me when you turned here if you turned in consequence of this barrier, or you turned simply to follow these men?

A. My recollection is I noticed there was a turn in the street there. At the same time I followed the men round, I noticed the men turned, and I followed them, and was governing my motions by theirs.

Q. The same was true when you turned here (indicating on the plat), you was governing your motions by theirs?

A. I remember having the impression that I had got out on the street rather, because they were further to my left; I having that impression.

Q. What else do you remember?

A. I remember following.

Q. Which way was you looking? You had your eyes on these men. You remember of seeing them, don't you?

A. Yes, I was looking obliquely to the left.

Q. You were looking at these men, weren't you?

A. I was looking at them. I could see the dim outline of them at the time, and followed the men.

Q. Obliquely to the left?

A. I could hear the sound of their voices, and I thought I saw the outline of them inside of that lamp.

Q. · That was at the time you followed.   Could you not at that time have seen the walk if you had looked down on the walk?

A.   I don't think I could.

Q.   Will you swear you could not?

A.   I don't think I could see the walk.

Q.   Did you not answer or swear a few moments ago that you could see the dim outline of these men for forty feet?

A.   I said by the lamp I could.   I could hear their voices, and hear the sound of —— ·

Q.   Did I not ask you what made you turn up here, and you told me you did not see any barrier, but you saw the dim outline of these men and you were following them? ·

A.   My recollection is not clear about that.   I am confident that I was following them more from the sound of their voices and the sound of their feet than anything else.

Q.   But you did not · testify, or your recollection is not clear as to what you did testify on that point.   Is that what you mean to say?   I ask you if you did not testify to me that you was following them because you could see the dim outline of them?   After I pressed you about following from the walk where you stepped off, did you not tell me you could see the dim outline of them?

A.   I don't remember.

Q.   Are you willing to swear that if you had been looking down at the plank that night, that you could not have seen the plank?

A.   I don't think I could along here.   I might if I had been down by the lamp.

Q.   Are you willing to swear that you could not have seen the plank in any place—without a lamp, I mean?

A.   Not definitely.

Q.   Was it any lighter when you left the Oriental Hotel than it was when you fell off?

A. I don't remember.

*   *   *   *   *   *   *   *

Q. Now when you did fall into the cellar, you turned sharply to the left, did you, to go in the direction of these men?

A. I turned a little to the left—in that direction.

Q. Did you turn obliquely to the left? What I mean is, did you turn sharply and walk directly in that direction, or did not walk obliquely to the left gradually? Did you make a right angle?

A. I made one step in that direction and that foot went down.

*   *   *   *   *   *   *   *

Q. Were you on the ground or on the plank when you took that step?

A. I could not be certain.

*   *   *   *   *   *   *   *

Q. And you took that step in order to head in the direction of these men you saw?

A. I did.

Q. And these men you saw were between the St. Charles Hotel and the light?

A. They were.

Q. And you turned in that direction in order to go directly in the direction where these men stood? That was your motive, was it not?.

A. I made the step to the left, thinking I had got too far into the street, and I thought that by seeing the men so far to my left.

Q. And they were the dogs, if such I may call them, that made you turn off in that direction?

A. They had something to do with it, yes.

*   *   *   *   *   *   *   *

Q. Do you still insist on swearing that that night you did not see a barrier on here?

A. I may have seen them.

Q. Do you still insist on swearing that you saw no guard there (counsel pointed to the eastern runway on the blotting-paper plat)?

A. I don't remember of—I don't remember to have seen any guard there.

Q. Do you still insist upon swearing that there was no guard there? Do you say you might have seen that barrier there (indicating on the plat the end of Eighth street)?

A. I remember this, that I turned to the right there. I may have seen a barrier, but I don't remember it.

Q. You say you may have seen the barrier?

A. I remember turning to the left, and may have seen an obstruction there—or to the right I mean, in place of the left.

\*      \*      \*      \*      \*      \*      \*      \*      \*

Q. You did not see any poles or buildings there at all, did you?

A. I don't remember.

Q. You did not see that house in the street at all, against which the first barrier was nailed (taking a plat and referring to it)—this one? You did not see that house there, did you?

Witness—This is the sidewalk running down there.

Mason—Yes, this is the street off here.

A. I think I did see a house there.

Q. In the street?

A. I think so.

Q. You think you saw this barrier?

A. Yes.

Q. Did you see the Metropolitan lights across the street?

A. I don't remember, but I think I saw lights. I do not remember for certain, but I think I saw lights on the opposite side of the street.

Now can it be said as matter of law that there is nothing in the above testimony of the plaintiff which tends to

show contributory negligence on his part? The court told the jury in the first instruction prayed by the plaintiff in error, that if the jury should find from the evidence that plaintiff was apprised and knew of the excavation in the sidewalk by a barricade across the same, or otherwise, before receiving the alleged injury, then the presumption of good repair ceased, and that they should find for the defendant, unless they should further find that the plaintiff thereafter exercised extraordinary care and precaution, and was so exercising extraordinary care and precaution at the time of the alleged injury. Had this instruction not been entirely nullified by the first instruction above quoted, could the jury have found that the plaintiff was in the exercise of extraordinary, or even of ordinary care and precaution, when as testified by him he had seen the barrier across the sidewalk, and having turned to the right and pursued his course in or near the middle of the street for a short distance, he turned sharply to the left and walked into the excavation without feeling his way so as to avoid the same? I think not. Again, I do not think that the jury, had they considered the question before them, could have found the plaintiff to have been in the exercise of extraordinary, or even of ordinary, care and caution, when through the streets of a strange city on a dark night he followed the dim outline and the sound of the voices and footfall on the sidewalk of two strange men. Certainly he could shift no part of his own duty to the shoulders of these two men.

But the real point is, did the testimony of the plaintiff tend to show contributory negligence on his part? If so, it was matter proper for the consideration of the jury, and should not have been taken from them, as I think it was by a construction of the first instruction, which I think the jury were warranted in placing upon it, and actually did place upon it.

Read together, the two instructions (No. 1 of instruc-

tions given by the court on its own motion, and No. 1 of instructions given at the request of plaintiff below) not only nullify each other, but they do withdraw from the consideration of the jury the circumstances detailed by the plaintiff, which I think tend to prove contributory negligence. Negligence is the absence of care, and *vice versa*. Extraordinary care is, therefore, the absence of slight negligence, and the jury are told in effect that it being proved that the injury resulted from the negligence of the defendant, the burden devolved upon the *defense* to show by evidence offered on its part that under the circumstances the plaintiff was guilty of at least slight contributory negligence. To so instruct them was to direct their attention upon this branch of the case solely to the defendant's testimony, or rather lack of testimony, and to advise them that if from scanning that alone, they did not find proof of slight negligence on the part of the plaintiff, the latter would be entitled to recover. Such a rule, if carried to its logical limits, would leave a defendant powerless, or at the mercy of the individual opinion of the presiding judge in every not extreme case, in which he is obliged to depend upon a cross-examination of the plaintiff and his witnesses for a disclosure of his adversary's negligence, causing or contributing to the injury complained of. Such, in an extreme case, would probably not be contended for as being the law, but whatever rule is adopted must be applicable alike to extreme cases, and those which would not be so regarded, otherwise the determination as to what rule shall be applied in a particular case will depend upon the decision of the presiding judge as to what class it falls into, and this would be to commit the decision of causes to mere caprice. Is follows, therefore, of necessity, that in every action of this kind, in which there is anywhere in the record *any* evidence tending in any degree to prove the existence of contributory negligence, the jury must be left to determine from all the evidence before them whether or not it in fact existed.

In the case of *Railroad Co. v. Stout,* 17 Wall., 657, the supreme court of the United States, in approving an instruction by the trial court, whereby a question of contributory negligence was left to the jury, say: "Upon the facts proven in such cases, it is matter of judgment and discretion of sound influence what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed. Another man, equally sensible, and equally impartial, would infer that proper care had been used, and that there was no negligence. It is this class of cases, and those akin to it, that the law commits to the decision of a jury. * * * It is assumed that twelve men know more of the common affairs of life than does one man. That they can draw wiser and safer conclusions from admitted facts thus occurring than a single judge. In no class of cases can this practical experience be more wisely applied than in that we are considering. We find accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us that although the facts are undisputed, it is for the jury and not for the judge to determine whether proper care was given, or whether they establish negligence."

The above case was cited with approval and followed by this court in the case of *A. & N. R. R. Co. v. Bailey,* 11 Neb., 332, which latter case was approved and followed in that of *Huff v. Ames,* 16 Id., 139.

I am therefore of the opinion that the court erred in giving the instruction number 1 of instructions given by the court on its own motion, and that for such error there ought to be a new trial.